# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILMINGTON FINANCE, INC., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 08-2365 |
| v. | : | |
| | : | |
| TOM L. MOONIS, P.C., | : | |
| | : | |
| Defendant. | | |

## Memorandum and Order

YOHN, J.                                                      October 21, 2008

Wilmington Finance, Inc. ("Wilmington" or "plaintiff"), a corporation organized under the laws of the State of Delaware with its principal place of business in Pennsylvania, brings this diversity suit against Tom L. Moonis, P.C. ("Moonis" or "defendant"), a domestic professional corporation organized under the laws of the State of New York. Wilmington alleges it was damaged by breach of fiduciary duty, negligence, and breach of contract on the part of Moonis in connection with two loan closings at which Moonis represented Wilmington. Presently before the court is Moonis's motion to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, I conclude that the court lacks personal jurisdiction over Moonis and, therefore, will dismiss Wilmington's complaint.

## I.  Factual and Procedural Background

Wilmington, a Delaware corporation with its principal place of business in Pennsylvania,

1

is in the mortgage business.  It makes loans to borrowers, secured by residential real property.
(Compl. ¶ 5.)  Moonis is a professional corporation engaged in the practice of law in the State of
New York with offices located at 135 W. Main Street, Suite 201, Smithtown, New York.
(Compl. ¶ 7; Aff. of Tom L. Moonis ¶ 3.)  Moonis acted as closing attorney for Wilmington at
eleven loan closings from July 2006 through January 2007.  (Compl. ¶¶ 6-7.)  Alleged problems
with two of those closings–concerning loans made to Lystra Bullen (the "Bullen loans")–form
the basis of this litigation.

Wilmington has alleged the following facts, which, in accordance with the standard of
review discussed below for motions pursuant to Rule 12(b)(2), the court accepts as true.  Bullen
purchased a property in Freeport, New York (the "Property") on or about September 27, 2006.
Wilmington made the Bullen loans, totaling $420,000, in connection with that purchase, and
Bullen granted mortgages on the Property to Wilmington to secure the Bullen loans.  (Compl. ¶¶
10-11.)  Wilmington retained Moonis to act as its closing agent for the Bullen loans and provided
Moonis with closing documents and instructions for each loan (the "Closing Instructions").
(Compl. ¶¶ 9, 12.)  The Closing Instructions required Moonis to: disburse funds "necessary to
satisfy existing mortgages and/or other obligations of the [s]eller" so that Wilmington could
obtain first and second mortgage lien priority on the Property.  (Compl. ¶ 12.)

The Closing Instructions also required, in relevant part, that Wilmington approve any
changes to any closing documents or fees disclosed on Fee Schedules (Compl. ¶¶ 14-15), that
Moonis notify Wilmington and Bullen if fund disbursement was not completed on the closing
date (Compl. ¶ 16), and that Moonis contact Wilmington with any questions it might have
regarding the Closing Instructions.  (Compl. ¶ 17.)  Wilmington transferred a total of
$417,665.72 (the "Loan Proceeds": $334,006.58 for the first Bullen loan and $83,659.14 for the

2

second Bullen loan) to Moonis's attorney escrow account for use at the closings. (Compl. ¶ 20.)
Moonis was to use the Loan Proceeds to pay off two existing mortgages that the seller had
granted on the property: one held by Deutsche Bank National Trust Company ("Deutsche Bank")
in the amount of $286,874.70 and a second in the amount of $30,000. (Compl. ¶¶ 22, 23.)

Jennifer Ranieri acted as closing agent for Moonis at the closings. (Compl. ¶ 9.) Ms.
Ranieri signed the Certifications to the Closing Instructions and prepared HUD-1 Settlement
Statements, indicating that the closings had concluded properly. (Compl. ¶¶ 18, 19.) Without
explanation, Wilmington alleges that, at the closings, Ranieri issued a check for $286,847.70 to
Washington Mutual Bank rather than to Deutsche Bank. (Compl. ¶ 28.) Wilmington alleges
that, the day after the closings, Moonis learned that the seller's first mortgage had not been
satisfied.[1] (Compl. ¶ 29.) Moonis did not modify the HUD-1s to reflect this information.
(Compl. ¶ 30.) Subsequently, Deutsche Bank foreclosed on the unsatisfied mortgage, taking title
to the Property on October 17, 2007. (Compl. ¶ 35.) Without Wilmington's approval, on
December 11, 2006 Moonis issued a pay-off check in the amount of $299,562.58 to Deutsche
Bank. (Compl. ¶¶ 31-32.) After accepting this payment, Deutsche Bank "transferred the
Property back to the [s]eller by quitclaim deed dated January 8, 2007 and executed by Deutsche
Bank on May 3, 2007." (Compl. ¶ 34.)

Wilmington subsequently initiated a foreclosure on the Bullen loans, but fears it will be
unable to establish that it holds valid or senior liens on the Property because of Deutsche Bank's
aforementioned foreclosure on and quitclaim transfer of the Property. (Compl. ¶ 36.)
Accordingly, Wilmington commenced this action against Moonis, alleging breach of fiduciary

---

[1] Wilmington alleges that Moonis learned this from a fax that it received. Wilmington
does not, however, identify the sender of that fax.

duty, negligence, and breach of contract.

Moonis asserts by affidavit, and Wilmington has not refuted, that Moonis has never conducted business in Pennsylvania, does not advertise in Pennsylvania, and has never traveled to Pennsylvania in connection with the subject of this litigation. (Aff. of Tom L. Moonis ¶¶ 4-5, 7.) Moonis further contends that it performed all services related to the subject matter of this litigation outside of Pennsylvania. (Aff. of Tom L. Moonis ¶ 6.) Wilmington points out that the Closing Instructions required Moonis "to return copies of the mortgages with original recording information to Wilmington at its Plymouth Meeting, Pennsylvania address" (Aff. of Donald Griffin ¶ 3)[2] and that "Wilmington paid Moonis for . . . services by wiring funds from its Pennsylvania account to Moonis's account." (Aff. of Donald Griffin ¶ 5.) Furthermore, Wilmington asserts that "Moonis purposefully directed activities and services to Wilmington . . . and Moonis knew or should have known Wilmington's principal place of business is in Pennsylvania." (Pl.'s Mem. of Law in Resp. to Def.'s Mot. to Dismiss at 1.)

## II. Discussion

Moonis moves to dismiss the case against it pursuant to Rule 12(b)(2) on the basis that the court lacks personal jurisdiction over it. In reviewing a motion to dismiss under Rule 12(b)(2), the court "'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). Nonetheless, a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual

---

[2] The Closing Instructions also required Moonis to send certified copies of the mortgages to an address that Wilmington maintained in Melville, New York and required that "all documents must be [at Wilmington's Melville, New York] office within 24 hours of closing." (capitalization omitted).

4

issues outside the pleadings." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 67

n.9 (3d Cir. 1984).  Furthermore, once a defendant has raised a personal jurisdictional defense,

the burden shifts to the plaintiff to prove that the relevant jurisdictional requirements are met.

*See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

Accordingly, to defeat a defendant's 12(b)(2) motion where the defendant has produced an

affidavit or other competent evidence that asserts facts contrary to the jurisdictional allegations of

the complaint, the burden is on the plaintiff to make a prima facie showing "through sworn

affidavits or other competent evidence" that the jurisdictional facts exist.  *Time Share Vacation*

*Club*, 735 F.2d at 67 n.9; *see, e.g.*, *N. Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d

687, 689 (3d Cir. 1990); *Harris v. Trans Union, LLC*, 197 F. Supp. 2d 200, 203 (E.D. Pa. 2002);

*In re Arthur Treacher's Franchise Litig.*, 92 F.R.D. 398, 410 n.11 (E.D. Pa. 1981).  Although the

plaintiff cannot rely solely on the bare pleadings to meet this burden, *see Time Share Vacation*

*Club*, 735 F.2d at 67 n.9, whatever the form of the submissions, the court must accept disputed

facts in the light most favorable to the plaintiff, *see Carteret*, 954 F.2d at 142 n.1.

     A district court must apply the law of the forum state to determine whether personal

jurisdiction over a nonresident is proper.  Fed. R. Civ. P. 4(k).  Absent special circumstances

such as a federal statute authorizing jurisdiction, a district court may not exercise personal

jurisdiction over a defendant unless that defendant would be subject "to the jurisdiction of a court

of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).

Pennsylvania's long-arm statute is coextensive with the limits of the Federal Constitution; thus,

the court may exercise personal jurisdiction over defendant so long as it does not violate the

Constitution.  42 Pa. Cons. Stat. § 5322(b);[3] *see also Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996); *Mellon Bank (East) PSFS*, 960 F.2d at 1221.

The Due Process clause of the Fourteenth Amendment of the United States Constitution limits the power of a state to assert personal jurisdiction over a non-resident defendant.  *See Pennoyer v. Neff*, 95 U.S. 714 (1878).  A state may entertain a suit involving such a defendant in two types of situations.  If the foreign party maintains "continuous and systematic" contacts with a state, the state has general personal jurisdiction over the party, and the non-resident may be sued in that state on any claim.  *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1957); *IMO Indus. v. Kierkert AG*, 155 F.3d 254, 259 n.2 (3d Cir. 1998).  When there are no such contacts, courts may assert personal jurisdiction if the litigation is "related to or arises out of the defendant's contacts with the forum."  *IMO Indus.*, 155 F.3d at 259.  This type of personal jurisdiction is known as specific jurisdiction.  *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984); *IMO Indus.*, 155 F.3d at 259.  Wilmington has not argued that Moonis maintains continuous and systematic contacts with Pennsylvania, nor do the facts presented support such a conclusion, so the court will restrict its personal jurisdictional analysis to specific jurisdiction.

The courts generally use a two-part test to determine whether they may assert specific jurisdiction over a nonresident.  *See IMO Indus.*, 155 F.3d at 259; *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 201 (3d Cir. 1998).  First, the defendant must have constitutionally sufficient "minimum contacts" with the forum state.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

---

[3] In relevant part, section 5332(a) also provides jurisdiction over a person "who acts directly or by an agent" to cause "harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth."

316 (1945). Such contacts require that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). To make this determination, courts question whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Second, the court must make a discretionary determination that subjecting the defendant to the court's jurisdiction "would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 320).

After analyzing the filings before the court, the court is satisfied that the facts alleged in this case are insufficient to empower the court with personal jurisdiction over Moonis. Wilmington has failed to establish that Moonis had the requisite minimum contacts with Pennsylvania such that the exercise of jurisdiction over Moonis would comport with the demands of due process.

Wilmington overemphasizes the legal significance of its own presence in Pennsylvania. "[I]t is the defendant's and not the plaintiff's contacts with the forum that must be evaluated." *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 214 (3d Cir. 1984). Moreover, the existence of a contractual relationship between Wilmington and Moonis is not sufficient to give the court personal jurisdiction over Moonis. *See Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 32 (3d Cir. 1993) ("A nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident.").

The Third Circuit has held that remote correspondence, even if allegedly contractual, between a nonresident and a Pennsylvania resident is not sufficient to render a nonresident

7

defendant amenable to personal jurisdiction in Pennsylvania. *Gehling v. St. George's Sch. of Med., LTD*, 773 F.2d 539, 544 (3d Cir. 1985). In *Gehling*, a medical school in Grenada, West Indies, through its agent in New York, sent an acceptance letter to a Pennsylvania resident and accepted tuition from that resident, who became a student at the school. *Id*. at 543-44. After the student died in a "school-sponsored road race in Grenada," the administratrix of the student's estate brought a wrongful death suit in Pennsylvania against the school, alleging the letter exchange created an implied contract "to exercise reasonable care to protect" the student. *Id*. at 540, 543. Noting that the alleged contract was to be performed in Grenada, the *Gehling* court held that Pennsylvania courts lacked personal jurisdiction over the school with respect to claims arising out of the alleged contract. *Id*. at 544. In contrast, the *Gehling* court did find that Pennsylvania courts had personal jurisdiction over the school regarding claims that arose from the delivery of the student's body to Pennsylvania by the school's chancellor personally. While in Pennsylvania, the chancellor was alleged to have committed fraudulent misrepresentation and intentional infliction of emotional distress. *Id*.

Wilmington's claims against Moonis resemble the contract claims in *Gehling* for which the Third Circuit held personal jurisdiction was lacking. This is a dispute between a resident plaintiff and a nonresident defendant arising out of a contract that was to be performed in New York. Unlike the claims for which the *Gehling* court found personal jurisdiction, Wilmington has not alleged that agents of Moonis traveled to Pennsylvania or that Moonis otherwise purposefully availed itself of the privileges of Pennsylvania law. The contractual relationship between Wilmington and Moonis does not establish the requisite minimum contacts necessary for personal jurisdiction.

Furthermore, that the consequences of Moonis's alleged acts may be felt by Wilmington

in Pennsylvania is not sufficient for personal jurisdiction if the activities causing such

consequences are not forum-related.

> Merely alleging that a non-resident committed an act or omission in another
> jurisdiction that caused harm to a Pennsylvania resident is insufficient [for personal
> jurisdiction]; even if the parties had a contractual relationship, the defendant will not
> be subjected to litigation in this Commonwealth unless his forum-related activities
> are sufficient to support the exercise of personal jurisdiction by Pennsylvania courts.

*Nutrition Mgmt. Servs. Co. v. Hinchcliff*, 926 A.2d 531, 539 (Pa. Super. Ct. 2007); *see*

*also Dollar Sav. Bank*, 746 F.2d at 213 (stating that "an economic impact in the state is of

little weight . . . [I]f incidental economic detriment as such furnishes a contact for

jurisdictional purposes, then every monetary claim would per se furnish the predicate for

personal jurisdiction over a non-resident.").

The facts alleged fail to demonstrate that Moonis "purposefully avail[ed] itself of

the privilege of conducting activities within [Pennsylvania], thus invoking the benefits

and protections of its laws." *Hanson*, 357 U.S. at 253.  There is no evidence that Moonis

conducted business in Pennsylvania.  To the contrary, the facts before the court support

the opposite conclusion, even when the court, as it must, views the facts in the light most

favorable to Wilmington.  Moonis represented Wilmington in New York in connection

with a real estate closing involving real property in New York.  Pennsylvania's

connection to this transaction was, at most, tangential.  As such, Moonis could not have

"reasonably anticipate[d] being haled into" a Pennsylvania court.  *World-Wide*

*Volkswagen Corp.* 444 U.S. at 297.  Moonis's status as a fiduciary for Wilmington does

not render personal jurisdiction any more foreseeable because Moonis's fiduciary

activities were not forum-related.  *See Reliance Steel Prods. Co. v. Watson, Ess, Marshall*

*& Enggas*, 675 F.2d 587, 589 (3d Cir. 1982) (holding that courts in Pennsylvania lack

9

personal jurisdiction over a nonresident law firm that undertook in Kansas "willing representation of a Pennsylvania [corporation]").

Wilmington urges the court to exercise personal jurisdiction over Moonis in part because Moonis accepted fees from Wilmington that were transferred from Wilmington's Pennsylvania bank account. To place jurisdictional significance on the location of a bank from which funds were remotely transmitted ignores the realities of modern banking. Accepting payment from a bank or client in a particular state does not constitute purposeful availment of privileges in that state for purposes of personal jurisdiction. *See Dollar Sav. Bank*, 746 F.2d at 210, 215 (determining, in the context of litigation over a transaction that occurred outside of Pennsylvania, that the defendant was not subject to personal jurisdiction in Pennsylvania despite the plaintiff's contentions that: (1) the defendant delivered secured notes to the plaintiff in Pennsylvania, (2) "funds were transferred from and repaid in" Pennsylvania, and (3) the defendant's alleged acts "'impacted'" the plaintiff in Pennsylvania); *Reliance Steel Prods. Co.*, 675 F.2d at 589 (finding the court lacked personal jurisdiction where the plaintiff alleged the defendant, nonresident law firm "negligently delivered legal advice into Pennsylvania by telephone and subsequently billed the client in Pennsylvania").

The facts alleged involve a defendant New York law firm providing services in New York with respect to loans to be secured by real property in New York. The plaintiff's business presence in Pennsylvania, along with the incidental circumstances of the location of the plaintiff's bank and the requirement that the defendant send certain documents to the plaintiff in Pennsylvania, do not constitute sufficient contacts to empower the court with personal jurisdiction over the defendant. Accordingly, the

10

complaint must be dismissed for lack of personal jurisdiction.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| WILMINGTON FINANCE, INC. | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 08-2365 |
| v. | : | |
| | : | |
| TOM L. MOONIS, P.C., | : | |
| Defendant. | : | |

## Order

YOHN, J.


**AND NOW**, this 21st day of October 2008, upon consideration of defendant's
motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) (Doc. No. 4),
plaintiff's response thereto, and defendant's reply thereto, **IT IS HEREBY ORDERED**
that:  Defendant's motion to dismiss is **GRANTED**.  Plaintiff's complaint is
**DISMISSED** for lack of personal jurisdiction over the defendant.


s/ William H. Yohn Jr., Judge
William H. Yohn Jr., Judge